**T. A. BLACKBURN LAW, PLLC**
1242 East 80th Street, 3rd Floor, Brooklyn, New York 11236
Telephone: (347) 342-7432 | Email: Tblackburn@tablackburnlaw.com

August 17, 2026

**Via CM/ECF**
The Honorable Clay H. Kaminsky, U.S.M.J.
United States District Court
for the Eastern District of New York
225 Cadman Plaza East, Chambers 505 North
Brooklyn, New York 11201

**RE: *Moyle, et al. v. United Parcel Service, Inc.***
**Case No.: 1:26-cv-00706 (CHK)**

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF THE MOTION FOR LEAVE TO FILE A FIRST AMENDED CLASS ACTION COMPLAINT**

Dear Judge Kaminsky:

This firm represents Plaintiff Roy Welsh, individually and on behalf of all others similarly situated, in the above-referenced action. Pursuant to the Court's July 23, 2026, Order, Plaintiff respectfully submits this reply in further support of his Motion for Leave to File a First Amended Class Action Complaint (the "Motion to Amend"). [D.E. 21.]

UPS's opposition [D.E. 25] does not engage the governing Rule 15(a)(2) standard. It offers no argument on delay, prejudice, or bad-faith amendment in any conventional sense, and it does not dispute that this is Plaintiff's first request to amend, made before any scheduling order, before discovery, and at the threshold of the case. Instead, UPS recycles the very statute-of-limitations arguments from its pending Motion to Dismiss [D.E. 18-1] and asks the Court to deny amendment as "futile." That effort fails for three independent reasons: (1) the futility inquiry cannot be used to resolve a contested, fact-laden affirmative defense that Plaintiff has plausibly pleaded around; (2) controlling New York appellate authority—*Tumminia v. Staten Island University Hospital*, 241 A.D.3d 17, 237 N.Y.S.3d 90 (2d Dep't 2025)—squarely forecloses UPS's CPLR § 205(a) theory and repudiates the only case UPS relies upon, *Ray v. Ray*, 22 F.4th 69 (2d Cir. 2021); and (3) UPS's "broken chain" and NYLL § 195(1) arguments misstate both the record and the law. The Motion to Amend should be granted.

A. <u>The Amendment Is Not Futile, and UPS's Limitations Defense Cannot Be Adjudicated on This Motion</u>.

Under federal pleading standards, an amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) *Lucente v. IBM*, 310 F.3d 243, *State St. Global Advisors Trust Co. v. Visbal*, 431 F. Supp. 3d 322. On that inquiry the Court accepts the FAC's allegations as true and draws all inferences in Plaintiff's favor. The statute of limitations, by contrast, is an affirmative defense on which UPS bears the burden, and it warrants dismissal at the pleading stage only where untimeliness is clear *on the face of the complaint*. Because UPS's defense depends on a contested reconstruction of the sequence, character, and legal effect of two prior dismissals—matters outside the four corners of the FAC—it cannot be resolved on a futility screen. A motion for leave to amend is not the vehicle to try UPS's limitations defense.

B. <u>Tumminia Is Controlling New York Authority That Permits Successive Application of CPLR § 205(a) and Expressly Rejects Ray</u>.

The scope of CPLR § 205(a) is a question of New York law, and the most recent and authoritative decision on the precise question presented here is *Tumminia v. Staten Island University Hospital*, 241 A.D.3d 17, 237 N.Y.S.3d 90 (2d Dep't 2025). There, the Appellate Division, Second Department, considered "whether CPLR 205(a) permits a litigant to commence an otherwise untimely new action within six months of the dismissal of a prior action where that prior action was, itself, made timely only by a previous application of CPLR 205(a)." The court held that it does. Once an action is rendered timely by operation of § 205(a), "it is timely in fact," and a further action commenced within six months of its dismissal satisfies the statutory proviso. 237 N.Y.S.3d at 97.

The *Tumminia* court's own illustration maps precisely onto this litigation: When there are three successive actions filed, with the second and third being commenced within six months of the dismissal of the previous action, the third action 'would have been timely commenced at the time of commencement of' the second action because, as a result of CPLR 205(a), the second action was timely. *Id.* That is this case exactly: *Murray* (first action), *Moyle 1* (second action, commenced within six months of *Murray*'s dismissal), and *Moyle 2* (this action, commenced within six months of *Moyle 1*'s termination). Critically, *Tumminia* squarely considered *Ray v. Ray*, 22 F.4th 69 (2d Cir. 2021)—the sole authority on which UPS's successive-invocation theory rests—and "respectfully disagree[d] with the Second Circuit," holding that "the plain language of CPLR 205(a) does allow for such a successive application." 237 N.Y.S.3d at 94.

That development is dispositive. When a federal court construes state law it makes an *Erie* prediction of how the State's courts would rule; a subsequent, on-point decision of the State's appellate courts supersedes the earlier federal forecast. *Ray* was a prediction of New York law; *Tumminia* is New York law. UPS's invocation of *Ray* as "binding" precedent that "forbids" Welsh from relying on § 205(a) is therefore mistaken: *Ray* no longer supplies the rule of decision on this question of New York law.

C. <u>UPS's "Broken Chain" Theory Misstates the Record: Moyle 1 Was Timely Commenced and Its Dismissal for Late Service Is a Non-Merits Termination That § 205(a) Is Designed to Save</u>.

UPS repeatedly asserts that *Moyle 1* was not "timely filed and served," conflating two distinct concepts to manufacture a broken chain. CPLR § 205(a) turns on whether the prior action was *timely commenced*, not on whether service was timely effected. *Moyle 1* was indisputably timely *commenced*: it was filed on January 28, 2024, within six months of the *Murray* dismissal. UPS's own brief confirms the ground of dismissal was *late service*—a defect governed by CPLR § 306-b—not a failure of timely commencement.

A dismissal for late service is precisely the kind of non-merits termination § 205(a) preserves. The statute bars relation back only where the prior action ended by (i) voluntary discontinuance, (ii) failure to obtain personal jurisdiction, (iii) neglect to prosecute, or (iv) a final judgment on the merits. A discretionary dismissal for late service under § 306-b is none of these. UPS's suggestion that the *Moyle 1* dismissal was a "failure to obtain personal jurisdiction" disqualifier is wrong: a Because the statute explicitly mandates that a dismissal for failure to effect timely service is "without prejudice," it does not operate as an adjudication on the merits NY CLS CPLR § 306-b. This type of dismissal represents a procedural defect rather than a judgment on the merits of the underlying claim NY CLS CPLR § 306-b, *Carrick v. Central General Hospital*, 51 N.Y.2d 242. The interest of justice standard under NY CLS CPLR § 306-b is a flexible, broad

standard designed to accommodate late service due to mistake, confusion, or oversight to allow potentially meritorious cases to go forward *Druss v. Scher*, 237 A.D.3d 1046, *JPMorgan Chase Bank, N.A. v Kothary*, 178 A.D.3d 791, *Leader v. Maroney*, 276 A.D.2d 194.

UPS's related "same transaction or occurrence" argument fares no better and, in all events, cannot be resolved on the pleadings. Both actions arise from the same integrated wage-and-hour practices at the same UPS facilities during an overlapping period. Indeed, Class Member Fari Murray straddled the very divide UPS posits he worked at UPS's Brooklyn facility both as a driver and as an On-Road Supervisor, and in the latter role was directed to manipulate drivers' punch-in and punch-out times to suppress overtime owed to the same drivers. The overtime UPS extracted from drivers and the overtime it denied the supervisors forced to administer that scheme are two facets of a single course of conduct—at a minimum a disputed factual question unsuited to disposition on a futility screen.

D. UPS's NYLL § 195(1) Argument Is a Merits Defense, Not a Basis to Deny Amendment.

UPS argues the § 195(1) wage-notice claim is futile because the annual-notice requirement was eliminated in 2015 and any at-hire claim is time-barred. That argument is both premature and overstated. Whether particular components of the § 195(1) claim survive the applicable limitations period is, once again, an affirmative-defense inquiry that turns on facts outside the FAC and is bound up with the same § 205(a) relation-back question resolved by *Tumminia*. The at-hire notice obligation under § 195(1) was *not* repealed; only the separate annual-notice requirement was. Resolving which theory is timely, and to what extent, requires a developed record—not denial of leave. Because the FAC states a § 195(1) claim that is plausible on its face, the amendment is not futile.

E. There Is No Bad Faith, and UPS's Request for Sanctions Is Both Procedurally Improper and Substantively Meritless.

UPS's demand for sanctions should be rejected out of hand. As a threshold matter, a request for Rule 11 sanctions may not be embedded in an opposition brief: Rule 11(c)(2) requires a separate motion and compliance with the 21-day safe harbor, and the Court's individual practices do not authorize a sanctions application by letter brief. UPS cannot bootstrap a merits dispute into sanctions request simply by labeling Plaintiff's position "baseless."

Substantively, the premise collapses on the law set out above. A position squarely supported by a 2025 decision of the Appellate Division, Second Department—*Tumminia*—that expressly rejects the very federal case UPS invokes is, by definition, not frivolous. That UPS disagrees with *Tumminia*, or reads the *Palaguachi* colloquy as foreclosing Plaintiff's chain, does not make a well-grounded, good-faith legal argument sanctionable. Seeking leave to refine and narrow claims—withdrawing a common-law count and recasting the Fair Play Act allegations as evidentiary support—is the ordinary, good-faith use of Rule 15, not a basis for sanctions.

F. Conclusion.

For the foregoing reasons, Plaintiff respectfully requests that the Court grant leave to file the First Amended Class Action Complaint, deny UPS's request for sanctions, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ *Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T. A. BLACKBURN LAW, PLLC
1242 East 80th Street, 3rd Floor
Brooklyn, New York 11236
(347) 342-7432
Attorney for Plaintiff